# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY McCLELLAN,<br><br>          Plaintiff,<br><br>     v.<br><br>KERN COUNTY SHERIFF'S OFFICE, et. al.,<br><br>          Defendants.<br>_____/ | CASE NO.   1:10-cv-0386-LJO-MJS (PC)<br><br>ORDER DISMISSING PLAINITFF'S SECOND AMENDED COMPLAINT, WITH LEAVE TO AMEND<br><br>(ECF No. 11)<br><br>AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

Plaintiff Gregory McClellan ("Plaintiff") is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff initiated this action on March 4, 2010. (ECF No. 1.)  Prior to the Court taking any action on Plaintiff's Complaint, Plaintiff filed a First Amended Complaint. (ECF No. 9.) Plaintiff has since filed a Second Amended Complaint. (Am. Compl., ECF No. 11.) Since no other parties have appeared and the Court has not yet screened Plainitff's pleading in this matter, the Court will allow Plaintiff to proceed on his Second Amendment Complaint.  Plaintiff's Second Amended Complaint is now before the Court for screening.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

§ 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ____ U.S. ____, ____, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not.  Id. at 1949-50.

A cursory review of the Complaint satisfies the Court that it does not comply with the pleading requirements in any way which would allow the Court to determine if it contains hidden within it a cognizable cause of action.  Moreover, given the demands imposed on this Court by the tremendous volume of these and voluminous other cases, it would not be practical nor fair to other litigants for the Court to spend the time necessary to go through this inordinately lengthy document to try to extract an identifiable, potentially cognizable claim, identify the facts, if any, related thereto and determine  which, if any, Defendant(s) could possibly be held to answer.  Instead, based upon review and identification of the various possible causes of action suggested, the Court will set out pleading standards applicable to each.  Plaintiff will then be given the opportunity to re-plead in **"a short and plain statement"** a claim which meets those standards.  Plaintiff will be required in that

amended complaint to assert only **related** claims against only those Defendants who may credibly be alleged to be responsible for the facts giving rise to those claims. Facts unrelated to those claims will not be permitted. Claims not related to the single set or series of facts giving rise to those claims will not be permitted. Further, this Court can envision few claims which would need more than twenty pages to set them out. Thus, any amended filing which is longer than twenty pages will be viewed with great skepticism and may be rejected on that basis alone. Finally, any filing which does not comply with these instructions directing a short and plain statement or any filing which combines unrelated matters or defendants likely will result in **dismissal with prejudice of the entire action.**

## II.    42 U.S.C. § 1983 CLAIMS

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

## III.    PLAINTIFF'S COMPLAINT

As an initial matter, the Court finds that Plaintiff's Complaint does not meet the Fed. R. Civ. P. 8(a)(2) requirement that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Plaintiff's Second Amended Complaint is over thirty-six pages long and contains unrelated claims and defendants. It names the following individuals as defendants: 1) Donny Youngblood, Kern County Sheriff, 2) William B. Hakker, Kern County Deputy Sheriff,

3) William G. Smallwood, Kern County Deputy Sheriff, 4) Kern County Sheriff's Office, 5) John Doe Contreras, Kern County Sheriff Deputy, 6) Jane Does 1-7, Kern County Sheriff Deputies, 7) John Does 1-7, Kern County Sheriff Deputies, 8) Sr. Contreras, Detentions Officer, 9) C. Larson, Detentions Officer, 10) T. Rodriguez, Detentions Officer, 11) S. Lozano, State Parole Agent, 12) K. Wood, B.P.D. Officer, 13) S. Perkins, B.P.D. Officer, 14) John Marshall, Warden CMC-West, S.L.O, CA, 15) T. Gonzales, A.W., CMC-West, 16) Cutillo, A.W., CMC-West, 17) Jane Doe, Civil Commitment Coord., CMC-West, 18) Darius Dawkins, CDCR Parole Agent (PA), and 19) Jon Fink, CDCR PA.

Plaintiff's allegations are as follows:

Plaintiff first brings a claim of false imprisonment against Defendants Youngblood, Hakker, Smallwood, and Kern County Sheriff's Office. (Am. Compl. at 5, 7, 9.) Plaintiff reviewed the documents filed in his criminal case and discovered that he had not committed the crimes of which Defendants Hakker and Smallwood accused him. (Id. at 6.) Defendant Youngblood allowed Plaintiff to be falsely charged. (Id.) Due to these Defendants' actions, Plaintiff has been falsely imprisoned from February 18, 2010 to the present. (Id. at 5.)

Plaintiff's second claim is for intentional infliction of severe "emotional stress." (Am. Compl. at 10.) Unnamed individuals are maliciously and unlawfully detaining Plaintiff, causing him to suffer from paranoia, nervousness, humiliation, severe mental suffering, and duress. (Id. at 11-10.)

Plaintiff's third claim is for abuse of process. (Am. Compl. at 12.) Plaintiff alleges that unnamed individuals participated in an abuse of process for bringing proceedings without probable cause or without a proper purpose. (Id. at 12-13.)

Plaintiff's fourth claim is for denial of access to the courts. (Am. Compl. at 14.) Plaintiff filed two grievances regarding access to the courts, both of which were denied. (Id.) Plaintiff had to proceed in propia persona and was unable to access the law library. (Id.)

Plaintiff's fifth claim is for unlawful retaliation under the First Amendment. (Am. Compl. at 16.) Plaintiff had filed grievances about the "'lack of probable cause to detain

Plaintiff" and the grievance was dismissed on February 18, 2010. (Id. at 18.) Plaintiff also filed a grievance for the return of his glasses. (Id.)

The following events occurred in retaliation to Plaintiff's grievances: Defendant Youngblood put a new law library policy into effect. (Am. Compl. at 16.) On December 16, 2009, Defendant Larson called Plaintiff for a blood pressure check but even though Plaintiff's blood pressure was high, she did not perform the check because Plaintiff was not on a list. (Id.) On December 13, 2009, Defendants Larson and Rodriguez had Plaintiff wait outside in cold weather when he was called for the doctor's line, even though Defendant Rodriguez knew Plaintiff was sick. (Id. at 16-17.) Defendant Larson asked Plaintiff what he had been charged with and gave away his special diet lunch twice. (Id.) Defendant Larson purposely gave Plaintiff a "red band," which implied that Plaintiff was a higher security risk and prevented him from attending church, even though she knew that Plaintiff was not facing a life sentence. (Id. at 18.)

Plaintiff's sixth cause of action is for denial of "prescribed ADA designated serious medical needs." (Am. Compl. at 20.) Plaintiff did not have his prescribed glasses for almost four months. (Id.) Defendant Kern County Sheriff's Office, Larson, Rodriguez, Contreras retaliated against Plaintiff for filing a grievance. (Id.) Defendant Kern County Sheriff's Office and its employees prevented Plaintiff from receiving medical care in violation of the ADA. (Id.) By doing so, they violated Plaintiff's rights under the Fifth, Eighth, Ninth, and Fourteenth Amendments. (Id.)

Plaintiff's seventh claim is for assault and battery with excessive force. (Am. Compl. at 21.) On August 17, 2009, Defendant Lozano slammed Plaintiff's face into the pavement, injuring his nose, eyes, and back. (Id.)

Plaintiff's eighth claim is for punishment without due process of law. (Am. Compl. at 22.) Plaintiff was taken to Wasco State Prison on July 15, 2011. (Id.) Defendants John Doe Contreras, Deputy Jane Doe, and Sergeant John Doe ignored Plaintiff's requests to not be sent to prison because he had not been "committed." (Id.) Defendant John Doe

Contreras knew that Plaintiff was being punished without due process. (Id.) Plaintiff was also punished without due process on November 9, 2006 when Defendants Fink and Dawkins sentenced Plaintiff to prison using unconstitutional parole procedures. (Id.) He was again punished without due process of law on November 9, 2007 when Defendant Marshall, Gonzales, Cutillo, and Jane Doe again placed Plaintiff on a parole hold. (Id. at 23.)[1]

Plaintiff's ninth cause of action is for deprivation of property without due process of law by Defendants Contreras, Youngblood, and Does. (Am. Compl. at 24.)

Plaintiff's tenth cause of action is for loss of familial association due to Defendants Dawkins, Fink, Marshall, Gonzales, Cutillo, Does, Youngblood, Hakker, Smallwood, and Kern County Sheriff's Office's actions.[2] (Am. Compl. at 24.)

Plaintiff's eleventh cause of action is for an illegal sentence against Kern County Superior Court. (Am. Compl. at 27.) Plaintiff's twelfth cause of action is for declaratory relief from an illegal arrest. (Id. at 33-34.) Plaintiff also alleges he is currently in imminent danger. (Id. at 28-33.)

Plaintiff asks for $16,000,000 in compensatory damages, punitive damages, and costs. (Am. Compl. at 34-35.)

## IV. LEGAL CLAIMS

### A. Federal Rule of Civil Procedure 18(a)

Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

---

[1] Plaintiff refers to a "Roberson" who is not named as a defendant in this action. (Am. Compl. at 23.)

[2] Again, Plaintiff refers to a "Roberson" who is not named as a defendant in this action. (Am. Compl. at 24.)

claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff's Complaint contains a number of unrelated claims in violation of Rule 18. The Court identifies six distinct groupings of unrelated claims: (1) claims related to Plaintiff's allegedly false imprisonment, (2) claims related to denial of court access, (3) claims related to retaliation, (4) claims related to the American with Disabilities Act, (5) claims related to excessive force, and (6) loss of familial association.

The Court will provide Plaintiff with the law applicable to each type of claim so that he might evaluate which, if any, he feels may be and should be pursued here and which, if any, may be and should be pursued in different actions.

Plaintiff must file a separate complaint for each unrelated claim against different defendants at different facilities. If he does not, all unrelated claims will be subject to dismissal.

### B.  Linkage Requirement

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

**C.     Heck Bar**

Plaintiff should be aware that when a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005); Preiser v. Rodriguez, 411 U.S. 475, 477 (1973); Young v. Kenny, 907 F.2d 874, 876 (9th Cir. 1990). Moreover, when seeking relief for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 28 U.S.C. § 2254; Heck v. Humphrey, 512 U.S. 477, 487–88 (1994). "A claim . . . bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488.

Heck makes it clear that a § 1983 cause of action "attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90. Any such claim is not cognizable and therefore should be dismissed. Wilkinson, 544 U.S. at 81-82 (clarifying that Heck applies to cases requesting damages as well as equitable relief); see Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995) (noting that a claim barred by Heck may be dismissed sua sponte without prejudice). The Heck rule usually precludes a prisoner-plaintiff from obtaining damages or equitable relief in a § 1983 action for alleged constitutional violations in connection with his criminal trial. The Heck rule also prevents a person from bringing an action that -- even if it does not directly challenge the conviction or other decision -- would imply that the conviction or other decision was invalid. The practical importance of this rule is that a plaintiff cannot attack his conviction in a civil rights action. The decision must have been successfully attacked before the civil rights action is filed. See Guerrero v. Gates, 442 F.3d 697, 703 (9th Cir. 2006)(Heck barred plaintiff's claims of wrongful arrest, malicious prosecution and conspiracy among police officers to bring false charges against him); see also Valdez v. Rosenbaum, 302 F.3d 1039, 1049 (9th Cir. 2002)(prisoner's Sixth

Amendment claim of denial of access to counsel while a pretrial detainee barred by Heck because claim would necessarily imply invalidity of subsequent conviction).

Here, a number of Plaintiff's claims directly challenge the legality of his confinement. These include his claim of false imprisonment, abuse of process, punishment without process, an illegal sentence, and an illegal arrest. Success on the merits of these claims would necessarily imply invalidity of his conviction and sentence. Plaintiff cannot recover monetary damages without first establishing pursuant to Heck that his conviction has been invalidated by "revers[al] on direct appeal, expunge[ment] by executive order, declar[ation of invalidity] by a state tribunal authorized to make such determination, or . . . a federal court's issuance of a writ of habeas corpus." 28 U.S.C. § 2254; Heck, 512 U.S. at 487–88. Plaintiff has not made such a showing here.

For the reasons stated, Plaintiff's claims for declaratory and monetary relief related to his claims of false imprisonment, abuse of process, punishment without process, an illegal sentence, and an illegal arrest are Heck barred and fail.

### D. Monnell Liability

Plaintiff has named the Kern County Sheriff's Office as a defendant in this action. Plaintiff should be aware that he must meet the requirements set forth below before he can allege any specific constitutional claims against this Defendant.

A municipality is considered a "person" under Section 1983 and may be liable for causing a constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1992); Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006). A municipality may not be sued under Section 1983 solely because an injury was inflicted by its employees or agents, however. Monell, 436 U.S. at 694. It is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. Id. "A policy is a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Long, 442 F.3d at 1185 (internal quotation marks and citations omitted).

To state a claim for municipal liability for the failure to protect an individual's constitutional rights, the plaintiff must establish facts indicating the following: (1) the plaintiff possessed a constitutional right, of which he was deprived, (2) the municipality had a policy, (3) the municipal policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the municipal policy is a moving force behind the constitutional violation. Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

### E.  Other Possible Claims

Plaintiff's non-Heck barred claims include the following: intentional infliction of emotional distress, deprivation of property, retaliation, violation of the American with Disabilities Act, access to the courts, excessive force, and loss of familial association. The Court will set out the legal criteria applicable to proper pleading such claims.

"[C]ivil detainees retain greater liberty protections than individuals detained under criminal process, and pre-adjudication detainees retain greater liberty protections than convicted ones. . . ." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). Treatment is presumptively punitive when a civil detainee is confined in conditions identical to, similar to, or more restrictive than his criminal counterparts, and when a pre-adjudication civil detainee is detained under conditions more restrictive than a post-adjudication civil detainee would face. Id. at 932-33.

Civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 322 (1982) (citation omitted).

The Court will set out the standards for prisoners, unless otherwise specified. When drafting his amended complaint, Plaintiff should bear in mind that as a civil detainee he is entitled to more considerate treatment and conditions of confinement than an ordinary prisoner.

///

///

      1.  First Amendment

a.     Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

With respect to the third prong, filing a grievance is protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is also protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison

-11-

authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

### b. Access to the Courts

While Plaintiff, as a civil detainee, has a constitutional right to access the courts, the interferences complained of by Plaintiff must have caused him to sustain an actual injury. Christopher v. Harbury, 536 U.S. 403, 415 (2002; Lewis v. Casey, 518 U.S. 343, 351 (1996); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Phillips v. Hust , 588 F.3d 652, 655 (9th Cir. 2009); Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004).  The absence of an injury precludes an access claim. Harbury, 536 U.S. at 415-16; Jones, 393 F.3d at 936.

### c. Free Exercise of Religion

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972).  However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline."  Bell v. Wolfish, 441 U.S. 520, 549 (1979).  Restrictions on access to "religious opportunities"-whether group services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Certainly, prisons are allowed to place a variety of restrictions on activities, including even religious worship, for security purposes and other legitimate penological reasons. See Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008).  However, denial of all

access to religious worship opportunities can violate the First Amendment. Id.

### 2. Eighth Amendment - Excessive Force

The analysis of an excessive force claim brought pursuant to § 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). The Eighth Amendment's prohibition on cruel and unusual punishment applies to incarcerated individuals, such as the Plaintiff here. Whitley v. Albers, 475 U.S. 312, 318 (1976). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson v. McMillian, 503 U.S. 1, 9 (1992); see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

Whether force used by prison officials was excessive is determined by inquiring if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176-77 (2010).

### 3. Fourteenth Amendment

a.	Deprivation of Property

The Due Process Clause protects prisoners from being deprived of property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).

An authorized, intentional deprivation of property is actionable under the Due Process Clause. Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985).[3] Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

For an unauthorized deprivation of property, Plaintiff would have to allege that he lacks a meaningful state tort remedy for any unauthorized property deprivation (i.e., a deprivation not authorized by properly adopted regulations, procedures and policies). Plaintiff should note that for unauthorized deprivations of property, he does have an adequate post-deprivation remedy under California law and therefore, any attempt to pursue a claim under federal law for unauthorized taking of his property fails as a matter of law. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895).

b.	Familial Association

Supreme Court and Ninth Circuit precedent establish that prisoners do not enjoy an absolute right to receive visits while incarcerated, even from family members. Dunn v. Castro, 621 F.3d 1196 (9th Cir. 2010). Dunn noted that the Supreme Court held that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." Kentucky Department of Corrections v. Thompson, 468 U.S.

---

[3] An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Logan, 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

Case 1:10-cv-00386-LJO-MJS   Document 12   Filed 08/21/12   Page 15 of 17

576, 589 (1984).

c. Grievance Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Mann v. Adams, 855 F.2d 639 (9th Cir. 1988), the Ninth Circuit held that a prisoner does not have a claim of entitlement to a grievance procedure. 855 F.2d at 640. This was reiterated in Ramirez v. Galarza, 334 F.3d 850 (9th Cir. 2003), when the Ninth Circuit observed that inmates do not have a separate constitutional entitlement to a grievance procedure. Thus, the case law is clear that Plaintiff is not entitled, as a matter of federal law, to a particular grievance procedure.

4. Americans With Disabilities Act

Title II of the Americans with Disabilities Act ("ADA") prohibits discrimination on the basis of disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pa. Dep't. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).

> To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo County, 609 F.3d 1011, 1021 (9th Cir .2010) (citing McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

"To recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)).

### 5. Intentional Infliction of Emotional Distress

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); Tekkle v. United States, 567 F.3d 554, 855 (9th Cir. 2007); Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621–22 (9th Cir. 2003). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Corales, 567 F.3d at 571; Tekkle, 511 F.3d at 855; Simo, 322 F.3d at 622.

## V.   CONCLUSION AND ORDER

As an initial matter, the Court finds that Plaintiff's Second Amended Complaint does not meet the Fed. R. Civ. P. 8(a)(2) requirement that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's Second Amended Complaint is dismissed;
2. Plaintiff is granted **thirty (30) days** from the date of service of this order to file an amended complaint that should be no longer than **twenty (20) pages** in length and **shall not combine unrelated facts or Defendants**; the amended complaint must comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint"; failure to file an amended complaint in accordance with this order will result in dismissal of this action without prejudice; and
3. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   August 20, 2012            /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE