# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY McCLELLAN,<br><br>            Plaintiff,<br><br>     v.<br><br>KERN COUNTY SHERIFF'S OFFICE, et al.,<br><br>            Defendants. | Case No.  1:10-cv-0386-LJO-MJS<br><br>FINDINGS AND RECOMMENDATIONS FINDING THAT PLAINTIFF STATES A COGNIZABLE FOURTH AMENDMENT CLAIM AND DISMISSING OTHER CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM<br><br>ECF No. 13<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Plaintiff Gregory McClellan ("Plaintiff") is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Prior to the Court screening Plaintiff's action, Plaintiff filed First and Second Amended Complaints.  (ECF No. 8, 11.)  The Court screened Plaintiff's Second Amended Complaint (ECF No. 11), dismissed it for failure to state a claim, but gave leave to amend (ECF No. 12).  Plaintiff has since filed a Third Amended Complaint. (Am. Compl., ECF No. 13.)  Plaintiff's Third Amended Complaint is now before the Court for screening.

### I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

### II. PLAINTIFF'S CLAIMS

Plaintiff names the following individuals and entities as defendants: 1) Donny Youngblood, Kern County Sheriff, 2) Kern County Sheriff's Office, 3) William G. Hakker, Deputy Sheriff in Kern County, 4) William G. Smallwood, Deputy Sheriff in Kern County,

2

5) S. Lozano, State Parole Agent with California Department of Corrections and Rehabilitation ("CDCR"), 6) Louis Wood, Officer with Bakersfield Police Department, 7) Kenneth Perkins, Officer with Bakersfield Police Department, 8) Senior Contreras, Deputy/Officer of Detentions at Kern County Jail (Lerdo Facility), 9) C. Larson, Deputy/Officer of Detentions at Lerdo Facility, 10) T. Rodriguez, Deputy/Officer at Kern County Jail Lerdo Facility, 11) Jane and John Does 1-7, Deputies/Officers at Kern County Jail Lerdo Facility, and 12) Joel Lueck, Deputy Public Defender at Kern County Public Defender's Office.

Plaintiff asserts causes of action for malicious prosecution, intentional infliction of emotional stress, abuse of process, denial of court access, unlawful retaliation (a First Amendment violation), inadequate medical care (an Eighth Amendment violation), excessive force (Fourth Amendment), denial of due process in connection with taking Plaintiff's property and administering punishment to him, and loss of familial association.

More specifically, Plaintiff alleges as follows:

1. Defendants Youngblood, Lozano, Wood, Perkins, Hakker, Lueck, and Smallwood maliciously prosecuted legal action against him. (Am. Compl. at 3.) Defendants Youngblood, Hakker, and Smallwood also violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure. (Id. at 6.) Plaintiff was charged with crimes he did not commit. (Id. at 3.) He was accused of removing his GPS monitor and not registering his address as ordered as a sex offender. (Id. at 5.) Plaintiff has documents proving he properly registered. (Id. at 6.) Defendants Youngblood, Hakker, and Smallwood detained Plaintiff without probable cause or other legal authority. (Id. at 4.) Defendant Lueck, Plaintiff's public defender, failed to provide Plaintiff documents

3

regarding his alleged crime and failed to present the proper documents to the Court. (Id.)  When Plaintiff later obtained the former documents, he learned he had not committed any crime.  (Id.)

   2.  Defendants Youngblood, Hakker, and Smallwood detained Plaintiff without probable cause. (Am. Compl. at 6.)  As a result, Plaintiff suffered paranoia, nervousness, humiliation, severe mental suffering, and duress.  (Id. at 7.)

   3. Plaintiff alleges that Defendants Youngblood, Hakker, and Smallwood abused legal process by bringing proceedings against Plaintiff without probable cause or proper purpose.  (Am. Compl. at 7 & 8.)

   4.  Plaintiff had to proceed in propia persona and was unable to access the law library or contact organizations and individuals to litigate his case.  (Am. Compl. at 8.) Plaintiff filed two grievances about lack of access to the courts; both were denied.  (Id.)

   5. Defendant Larson saw Plaintiff's grievance. Defendant Larson called Plaintiff in for treatment but did not check his blood pressure because he was not on her list. (Am. Compl. at 9.)   Plaintiff's blood pressure was high at the time.  (Id.)  Defendant Larson also failed to give Plaintiff his special diet lunch twice.  (Id. at 10.)  Plaintiff was also denied adequate church access by unnamed individuals after he filed his grievances.  (Id.)  Plaintiff alleges these adverse actions were in retaliation for his grievance. (Id.)

   6.  Plaintiff did not have his prescribed glasses for almost four months and thus was denied a serious medical need. (Am. Compl. at 11.)   Plaintiff filed a grievance for his glasses, and Defendants Kern County Sheriff's Office, Larson, Rodriguez, and Contreras retaliated against him.  (Id.)

4

7. Plaintiff's accuses Defendants Lozano, Wood, and Perkins of assault, battery and excessive force. (Am. Compl. at 11.) On August 17, 2009, Defendant Lozano slammed Plaintiff's face into the pavement while Plaintiff was kneeling on the ground with his hands behind his back. (Id.) Plaintiff injured his nose, eyes, and back and continues to experience pain from the incident. (Id.) Defendants waited several months before they filed charges against Plaintiff. (Id.)

8. Plaintiff also claims he was denied due process of law. (Am. Compl. at 13.) Plaintiff was taken to Wasco State Prison on July 15, 2011. (Id.) Defendants John Doe Contreras, Deputy Jane Doe, and Sergeant John Doe ignored Plaintiff's objections that he had not been sentenced to prison. (Id.) They knew or should have known that he was being punished without due process. (Id.) Defendants Contreras, Jane Doe, John Doe Sergeant, Kern County Sheriff's Office, and Youngblood placed Plaintiff's life in danger by placing him in prison where he could be injured. (Id.) Plaintiff was also denied his medications while at Wasco State Prison. (Id.)

9. Plaintiff claims Defendants Kern County Sheriff's Office, Contreras, Youngblood, and John Doe Sergeant, and Jane Doe Deputy deprived him of property without due process. (Am. Compl. at 14.) Plaintiff signed a receipt for his property, but it has not been returned to him. (Id.)

10. Finally, Plaintiff claims Defendants Youngblood, Hakker, and Smallwood's actions caused him the loss of familial association. (Am. Compl. at 14.)

Plaintiff seeks injunctive relief and $4,950,000 in compensatory and punitive damages.

////

////

### III. ANALYSIS

#### A. Initial Observation

This Court's previous screening order directed Plaintiff to eliminate claims potentially barred by Heck v. Humphrey, 512 U.S. 477, 487–88 (1994) and to include only related claims in his amended pleading. (ECF No. 12.) Plaintiff has complied with neither directive. He has re-alleged almost every single claim. It should not be surprising then that this pleading meets essentially the same fate as the earlier one.

#### B. 42 U.S.C. § 1983 Claims

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

#### C. *Heck* Bar

Plaintiff was previously advised that when a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Wilkinson v. Dotson,

544 U.S. 74, 78 (2005); Preiser v. Rodriguez, 411 U.S. 475, 477 (1973); Young v. Kenny, 907 F.2d 874, 876 (9th Cir. 1990). When seeking relief for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 28 U.S.C. § 2254; Heck v. Humphrey, 512 U.S. 477, 487–88 (1994). "A claim . . . bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488.

Heck makes it clear that a § 1983 cause of action "attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90. Any such claim is not cognizable and therefore should be dismissed. Wilkinson, 544 U.S. at 81-82 (clarifying that Heck applies to cases requesting damages as well as equitable relief); see Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995) (noting that a claim barred by Heck may be dismissed sua sponte without prejudice). The Heck rule usually precludes a prisoner-plaintiff from obtaining damages or equitable relief in a § 1983 action for alleged constitutional violations in connection with his criminal trial. The Heck rule also prevents a person from bringing an action that -- even if it does not directly challenge the conviction or other decision -- would imply that the conviction or other decision was invalid. The practical importance of this rule is that a plaintiff cannot attack his conviction in a civil rights action. The decision must have been successfully attacked before the civil rights action is filed. See Guerrero v. Gates, 442 F.3d 697, 703 (9th Cir. 2006) (Heck barred plaintiff's claims of wrongful arrest, malicious prosecution and

conspiracy among police officers to bring false charges against him); see also Valdez v. Rosenbaum, 302 F.3d 1039, 1049 (9th Cir. 2002) (prisoner's Sixth Amendment claim of denial of access to counsel while a pretrial detainee barred by Heck because claim would necessarily imply invalidity of subsequent conviction).

As the Court previously informed Plaintiff, several of his claims depend solely on his contention that he was illegally arrested for a parole violation and incarcerated at Wasco and Avenal State Prisons even though, he claims, he did not violate his parole and there was no probable cause for his arrest.  Plaintiff seems to contend that the arrest and incarceration, and the administrative and security steps taken in the course thereof, constituted malicious prosecution, unreasonable search, infliction of emotional distress, abuse of process, punishment without due process of law, deprivation of property without due process of law, and loss of familial association.  Though the Complaint is not easy to decipher, the undersigned concludes that Plaintiff is complaining about the mere fact that these things happened to him as an incident to his arrest and confinement, not that they were carried out in a wrongful or unconstitutional manner.  As such, success on the merits of such claims necessarily would imply the invalidity of his conviction and sentence.  Plaintiff cannot seek monetary damages for same without first establishing pursuant to Heck that his conviction has been invalidated by "revers[al] on direct appeal, expunge[ment] by executive order, declar[ation of invalidity] by a state tribunal authorized to make such determination, or . . . a federal court's issuance of a writ of habeas corpus."  28 U.S.C. § 2254; Heck, 512 U.S. at 487–88.  Plaintiff has not made such a showing here.

Accordingly, Plaintiff's claims for malicious prosecution, unreasonable search, intentional infliction of emotional distress, abuse of process, punishment and

deprivation of property without due process of law, and loss of familial association should be dismissed from this action.

**B.   First Amendment**

1.   Denial of Access to Courts

Inmates have a fundamental right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–15 (2002). For access to the courts claims, the plaintiff must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Id. at 413–14.

The first element requires that the plaintiff show he suffered an "actual injury" by being shut out of court. Harbury, 536 U.S. at 415; Lewis, 518 U.S. at 351. The second element requires that the plaintiff show the defendant proximately caused the alleged violation of plaintiff's rights, the touchstone of which is foreseeability. Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)); see Tahoe–Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency, 216 F.3d 764, 784–85 (9th Cir. 2000). Finally, the third element requires that the plaintiff show he has no other remedy than the relief available via this suit for denial of access to the courts. Harbury, 536 U.S. at 415. The complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a). Id. at 417–18.

Plaintiff alleges that Defendants Kern County Sheriff's Office and Youngblood implemented a prison policy that prevented Plaintiff from accessing the courts. Plaintiff does not identify any actual injury suffered as a result of Defendants' actions. He does not address causation. He does not address whether another remedy was available. Plaintiff has failed to allege a First Amendment access to court claim against Defendants Kern County Sheriff's Office and Youngblood and this claim should be dismissed.

### 2. Retaliation

Plaintiff alleges that Defendants Youngblood, Larson, and Rodriguez retaliated against his filing of grievances by failing to check his blood pressure, making him wait in the cold, and refusing to provide him his special diet sandwich. Plaintiff also alleges that Defendant Larson retaliated against him by failing to grant his grievances.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff has adequately alleged adverse actions on the parts of Defendants Youngblood, Larson, and Rodriguez.

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310,

1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

Plaintiff has failed to allege causation. He alleges that these Defendants took their adverse actions in December 2009 in retaliation for grievances that were not filed until February 2010. Plaintiff has failed to state a First Amendment retaliation claim and this claim should be dismissed.

### 3. Religious Freedom

Included with one of his other allegations, Plaintiff alleges that Defendant Youngblood violated his religious rights under the Fourteenth Amendment by not allowing Plaintiff to go to church at every available opportunity. Plaintiff's allegations are best suited to a First Amendment claim and the Court will so analyze them.

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979). Restrictions on access to "religious opportunities"-whether group services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid,

rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Certainly, prisons are allowed to place a variety of restrictions on activities, including even religious worship, for security purposes and other legitimate penological reasons. See Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). However, denial of all access to religious worship opportunities can violate the First Amendment. Id.

Plaintiff's allegations do not address any of the four criteria. He does not explain what policy prevented him from attending church when he wanted, whether there was a valid governmental purpose for the policy, whether Plaintiff had alternative means of exercising his religious rights, whether accommodating Plaintiff would have had a significant impact on guards or other inmates, or whether there were other means of addressing such impact. The claim should be dismissed.

C. **Fourth Amendment**

Plaintiff alleges that Defendants Lozano, Wood, and Perkins used unnecessary force when arresting Plaintiff on August 17, 2009.

The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Encompassed within the term "unreasonable seizure" is the right to be free from excessive force and protection

from "unreasonable intrusions on one's bodily integrity." Fontana v. Haskin, 262 F.3d 871, 878-79 (9th Cir. 2001).  To state a Fourth Amendment claim, a plaintiff must show that the amount of force used was unreasonable or that the manner in which the arrest was effectuated was an unlawful intrusion into her bodily integrity.  Gregory v. County of Maui, 523 F.3d 1103, 1106 (9th Cir. 2008); Fontana, 262 F.3d at 879.  Determining the "reasonableness" of a particular action "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id.  (internal quotation marks omitted). To determine the reasonableness of the use of force, the Court first must evaluate "the type and amount of force inflicted." Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003).  The Court must then consider the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest.  See Graham v. Connor, 490 U.S. 386, 396 (1989). Finally, the Court must balance the gravity of the intrusion on the individual against the government's need for that intrusion.  Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000) (judgment vacated and case remanded for further consideration in light of Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), by County of Humboldt v. Headwaters Forest Defense, 534 U.S. 801, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001)) (judgment reaffirmed after remand by Headwaters Forest Defense v. County of Humboldt, 276 F.3d 1125, 1127 (9th Cir. 2002)).

Plaintiff alleges that Defendants Lozano, Wood, and Perkins arrested him for a parole violation based on Plaintiff's failure to update his address as he, a registered sex

offender, was required to do. During the arrest process, Defendants Lozano, Wood, and Perkins pushed Plaintiff's face into the pavement even though Plaintiff knelt on the ground and submitted to the arrest and even though his crime, failing to update his address, was not severe or violent. He did not resist in any way or pose any immediate threat to Defendants. Taking Plaintiff's allegations as true at this stage of the proceedings, Plaintiff has stated a Fourth Amendment claim against Defendants Lozano, Wood, and Perkins.

### D. Eighth Amendment

Plaintiff alleges that Defendants Kern County Sherriff's Office, Larson, Rodriguez, and Contreras failed to provide him with eyeglasses for several months in violation of his rights under the Eight Amendment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

In addition to a serious medical condition, Plaintiff must also establish deliberate indifference. To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by

the indifference." Id. (citing McGuckin, 974 F.2d at 1060). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff provides no information to suggest that the lack of eyeglasses constituted a serious medical condition. He includes nothing to suggest Defendants were deliberately indifferent to his need or even that they knew he needed, but did not have, glasses. He has failed to allege an Eighth Amendment medical care claim.

### E. Injunctive Relief

Plaintiff seeks injunctive relief.

Injunctive relief is an "extraordinary remedy, never awarded as of right." Winter v. Natural Res. Defense Council, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. (citing Munaf v. Geren, 553 U.S. 674, 689–90 (2008)).

Plaintiff has not identified any real and immediate threat of injury he faces. See City of Los Angeles v. Lyons, 461 U.S. 95, 101–102 (1983) (plaintiff must show "real and immediate" threat of injury, and "past exposure to illegal conduct does not in itself

15

show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects."). The Court is unable to determine at this time how Plaintiff would suffer without the requested relief.

There is no allegation of impending harm and so nothing tips the balance of equities in Plaintiff's favor. While the public has an interest in providing the best practical prisoner care, the record before the Court does not justify the Court substituting its judgment for that of the prison medical staff in these matters.

The various criteria not having been met, Plaintiff is not entitled to injunctive relief. Plaintiff should not be given leave to amend this claim.

### G. Amendment Futile

The Court previously advised Plaintiff of the deficiencies in his pleading and of the law outlining what is necessary to assert causes of action such as he suggests. There is no indication Plaintiff made any effort to modify his pleadings accordingly; indeed it appears he rather blatantly ignored the Court's directions and instructions. No useful purpose would be served by once again pointing out those deficiencies and giving Plaintiff yet another opportunity to do that which he declined to do previously. Leave to amend should be denied.

### IV. CONCLUSION AND RECOMMENDATION

Plaintiff's Third Amended Complaint states a cognizable claim for relief against Defendants Lozano, Wood, and Perkins for unreasonable seizure in violation of the Fourth Amendment arising out of their actions at the time of Plaintiff's arrest. Plaintiff has failed to state any other cognizable claims against any other Defendants. These deficiencies are not capable of being cured through amendment and therefore, the

Court recommends that this action proceed on Plaintiff's viable Eighth Amendment claim and the other claims and defendants be dismissed.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed as one for damages on Plaintiff's Fourth Amendment unreasonable seizure claim against Defendants Lozano, Wood, and Perkins arising out of Plaintiff's arrest;

2. Plaintiff's malicious prosecution claim against Defendants Youngblood, Lozano, Wood, Perkins, Hakker, Lueck, and Smallwood be dismissed with prejudice;

3. Plaintiff's unreasonable search claim against Defendants Youngblood, Hakker, and Smallwood be dismissed with prejudice

4. Plaintiff's intentional infliction of emotional distress claim against Defendants Youngblood, Hakker, and Smallwood be dismissed with prejudice;

5. Plaintiff's abuse of process claim against Defendants Youngblood, Hakker, and Smallwood be dismissed with prejudice;

6. Plaintiff's punishment without due process of law claim against Defendants Contreras, Jane Doe, John Doe Sergeant, Kern County Sheriff's Office, and Youngblood be dismissed with prejudice;

7. Plaintiff's deprivation of property without due process of law claim against Defendants Kern County Sheriff's Office, Contreras, Youngblood, John Doe Sergeant, and Jane Doe Deputy be dismissed with prejudice;

8. Plaintiff's loss of familial association against Defendants

Youngblood, Hakker, and Smallwood be dismissed with prejudice;

9. Plaintiff's First Amendment access to courts claim against Defendants Kern County Sheriff's Office and Youngblood be dismissed with prejudice;

10. Plaintiff's First Amendment retaliation claim against Defendants Youngblood, Larson, and Rodriguez be dismissed with prejudice;

11. Plaintiff's First Amendment religious freedom claim against Defendant Youngblood be dismissed with prejudice;

12. Plaintiff's Eighth Amendment medical care claim against Defendants Kern County Sherriff's Office, Larson, Rodriguez, and Contreras be dismissed with prejudice;

13. Plaintiff's claim for injunctive relief be dismissed with prejudice; and

14. Defendants Youngblood, Kern County Sheriff's Office, Hakker, Smallwood, Contreras, Larson, Rodriguez, Jane and John Does 1-7, and Lueck be dismissed from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified

////

////

////

////

time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    September 27, 2013         /s/ *Michael J. Seng*
                                                UNITED STATES MAGISTRATE JUDGE